UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| KENNETH RAY GRIFFIN, <br> # 98394, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | No. 1:17-cv-00068 <br> CHIEF JUDGE CRENSHAW |
| v. | ) <br> ) | |
| CORECIVIC, *et al.*, | ) <br> ) | |
| Defendants. | ) | |

# MEMORANDUM

Kenneth Ray Griffin, an inmate of the South Central Correctional Facility in Clifton, Tennessee, brings this *pro se, in forma pauperis* action under 42 U.S.C. § 1983 against CoreCivic, Damon Hingiea, Cherry Lindamood, Ronnie White, Jammie Garver, A. Franks, Jane Doe, John Doe, and Tony Parker, alleging violations of the Plaintiff's federal civil and constitutional rights. (Doc. No. 1). The Plaintiff seeks a declaratory judgment, monetary damages, injunctive relief, and costs. (Id. at 12). The Plaintiff additionally has filed a motion for the appointment of counsel (Doc. No. 3) and a motion to amend his complaint (Doc. No. 4).

## I. Motion to Appoint Counsel

The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical liberty if he loses the litigation." Lassiter v. Dep't of Social Servs., 452 U.S. 18, 25 (1981). Thus, unlike criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. Willett v. Wells, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), aff'd, 595 F.2d 1227 (6th Cir. 1979); see Williamson v. Autorama, Inc., No. 91-5759, 947 F.2d 947 (6th Cir. 1991)(citing Willett favorably). The appointment of counsel for a civil

1

litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. Lavado v. Keohane, 992 F.2d 601, 604-05 (6th Cir. 1993).

The Plaintiff's circumstances as described are typical to most prisoners and do not suggest anything exceptional in nature. The Plaintiff submitted a detailed, coherent complaint. He does not allege that he suffers from any mental defects or physical disabilities that would limit his ability to prosecute his case. Therefore, the motion for the appointment of counsel (Doc. No. 3) will be denied.

## II.     Motion to Amend

Shortly after filing his original complaint, the Plaintiff filed a motion to amend his complaint. (Doc. No. 4). Rule 15(a) (2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment. Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1001 (6th Cir. 2005).

The proposed amendments to the complaint provide additional context for the claims raised in the original complaint. There appears to be no undue prejudice to the opposing party by permitting the Plaintiff to amend his complaint at this time; the Defendants have not been served. The Court therefore will grant the motion to amend and screen the original complaint, as informed by the proposed amendments to the original complaint, pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## III. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108,

3

110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

IV. **Section 1983 Standard**

Griffin brings his federal claims pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

V. **Alleged Facts**

The complaint alleges that, while incarcerated at the South Central Correctional Facility, on July 28, 2016, the Plaintiff discovered what he believed to be a blood clot in his hand. He informed Defendant Ronnie White, Unit Manager, but White left for the day without assisting the Plaintiff. The Plaintiff subsequently attempted to see a facility doctor, but an unidentified nurse told the Plaintiff that "unless they could see it [the blood clot] or there was some type of paralysis . . . there was nothing she could do but that if [the Plaintiff] had any symptoms of either to get [the Plaintiff] to medical ASAP." (Doc. No. 1 at 4).

On August 2, 2016, the plaintiff's left leg and foot became swollen, and the next day the Plaintiff turned in a form to see the doctor. On August 4, 2016, Defendant Nurse Practitioner f/n/u Franks examined the Plaintiff, ordered antibiotics and an ultrasound for him, and returned the Plaintiff to his cell. On August 6, 2016, the Plaintiff awoke to find his foot severely swollen with

yellow fluid oozing out of his foot. The Plaintiff notified the Unit Manager, who contacted the medical department, and an unidentified medical department employee told the Unit Manager that "they did not have time to deal with plaintiff." (Id.) On the following morning, officers came to the Plaintiff's cell and escorted him to the medical department.

Nurse f/n/u Plunk briefly examined the Plaintiff and determined that he needed to be taken to an outside hospital. The Plaintiff was transported to the Wayne County Medical Center and then to the Nashville General Hospital. On the way to the Nashville General Hospital, a car pulled out in front of the van in which the Plaintiff was being transported and the driver slammed on her brakes, slinging the Plaintiff against a steel cage; there were no seatbelts in the transport van.

The Plaintiff was admitted to the Nashville General Hospital and, four days later, he underwent an operation on his leg. He underwent two additional operations before being discharged and transferred to DeBerry Special Needs Facility. On September 16, 2016, the Plaintiff was returned to the South Central Correctional Facility medical ward. During his stay in the medical ward, nurses repeatedly changed the Plaintiff's bandages and examined the skin beneath. The Plaintiff "begged them to send him back to the Doctor/Hospital" because he did not believe his wound was healing, but the Plaintiff remained in the care of the facility medical ward staff. (Id. at 6). The Plaintiff wrote letters to commissioners, clinical directors, and state representatives for assistance in receiving additional or different medical attention.

On October 12, 2016, the Plaintiff was transported to the Nashville General Hospital and treated by Dr. R. Peebles. The Plaintiff returned on October 21, 2016, for additional treatment. The Plaintiff was scheduled to return on October 26, 2016, but the appointment was missed due to reasons not specified in the complaint. On November 2, 2016, November 9, 2016 and November

18, 2016, the Plaintiff returned to the hospital for additional treatment by Dr. Peebles. On November 30, 2016, the Plaintiff underwent a skin graft at the hospital and returned on December 9, 2016, for a follow-up visit. Again, on December 21, 2016, the Plaintiff returned to the hospital for additional examination and treatment by Dr. Peebles. On February 8, April 7, April 12, and April 26, 2017, the Plaintiff returned to the hospital for additional examination, a second skin graft, and additional monitoring. Between October 21, 2016 and February 8, 2017, the Plaintiff missed five appointments with Dr. Peebles for unspecified reasons.

The Plaintiff was informed on May 27, 2017, that he could not receive physical therapy until the wound was closed. From June 1, 2017, to June 6, 2017, nurses and nurse practitioners changed the Plaintiff's bandages. On June 6, 2017, Dr. f/n/u Sodo told the Plaintiff that he would need to change his own bandages from that point forward.

On June 12, 2017, when the Plaintiff returned to the Nashville General Hospital for an appointment with "ortho," the Plaintiff was told he needed to see Dr. Peebles to have the wound closed. As of the date the Plaintiff filed his complaint, the prison medical department had not made a follow-up appointment for the Plaintiff with Dr. Peebles. According to the Plaintiff, "[d]ue to the medical negligence and the reckless and deliberate indifferences" of the Defendants, the Plaintiff suffers from severe pain and suffering, has lost his ability to walk or run properly, and must use crutches. (Id. at 11).

**V.    Analysis**

The Eighth Amendment of the United States Constitution imposes an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. Grubbs v. Bradley, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such

6

necessities is a violation of an inmate's right to be free from cruel and unusual punishment. Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984). To establish a violation of his Eighth Amendment rights, a plaintiff must show that prison officials acted with deliberate indifference in violating the plaintiff's constitutional or civil rights. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994).

The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle, 429 U.S. 97 at 104; Brooks, 39 F.3d at 127. A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. Rouster v. Cnty. of Saginaw, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id.

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. Estelle, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. Id. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue

7

that his health suffered as a consequence of such alleged denial. See Thaddeus-X v. Blatter, 175 F.3d 378, 401 (6th Cir. 1999).

The Court assumes for purposes of the required PLRA screening that the Plaintiff's blood clot and subsequent wounds constituted a sufficiently serious medical need. See Rouster, 749 F.3d at 446. The complaint chronicles the Plaintiff's many examinations by CoreCivic medical personnel and outside physicians as well as procedures and follow-up visits by the Plaintiff over the course of his treatment. Although the Plaintiff disagrees with the medical care he received and may have good reason to do so, a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim.

The complaint describes an instance where an unidentified nurse refused to refer the Plaintiff to a facility physician, stating that the Plaintiff's symptoms did not merit additional examination at that time. The nurse did, however, tell the Plaintiff to return to the medical department "ASAP" if certain symptoms arose. (Doc. No. 1 at 4). However, even if the Plaintiff's medical treatment by any Defendant was allegedly deficient in some manner, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 105-06.

Although the complaint alleges that the Defendants acted with deliberate indifference in their treatment (or lack of treatment) of the Plaintiff's medical needs, the allegations of the complaint do not allege "facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Rouster, 749 F.3d at 446. Instead, the complaint details how many times the Plaintiff was transported to an outside hospital for examinations, tests, treatment, and follow-up visits. The complaint alleges that the Plaintiff missed a total of five medical appointments

8

with Dr. Peebles, that a nurse refused to refer the Plaintiff to a facility doctor at one point, and that the Plaintiff's follow-up appointment with Dr. Peebles has been delayed. The complaint does not allege that any Defendant intentionally thwarted the Plaintiff's efforts to receive medical care. The closest call, perhaps, is the complaint's allegation that, on August 6, 2016, the Plaintiff awoke around 10:30 p.m. to find his foot severely swollen with yellow fluid oozing out of his foot, and the medical department sent word to the Plaintiff by way of the Unit Manager that "they did not have time to deal with plaintiff." (Doc. No. 1 at 4). However, the Plaintiff was escorted to the medical department the following morning at 6:30 a.m. and was treated immediately. The complaint does not explain why the medical department did not have time to see the Plaintiff late in the evening of August 6, 2016; without more, the Court cannot infer that any member of the medical team was deliberately indifferent to the Plaintiff's medical needs, particularly given the detailed record of care given to the Plaintiff by the facility medical staff and the outside treatment afforded the Plaintiff over many months. Simply put, the Plaintiff here has not alleged that the course of action taken by Defendants in this case was constitutionally deficient. Consequently, the Court finds that the complaint fails to state Eighth Amendment medical treatment claims upon which relief can be granted against the Defendants.

Finally, the complaint alleges that, en route to the hospital, the Plaintiff was thrown into a steel cage when the transport van driver slammed on her brakes to avoid a car that pulled out in front of the transport van. (Doc. No. 1 at 5). The complaint does not allege that the Plaintiff sustained any injuries as a result. According to the Plaintiff, the transport van did not have seat belts, which places inmates at risk for harm during transport. As the Court previously observed, transporting inmates without seatbelts alone does not amount to the deliberate indifference required to constitute

cruel and unusual punishment. Groce v. Smith, No. 3:15-cv-0823, 2015 WL 4743818, at *2 (M.D. Tenn. Aug. 10, 2015)(Trauger, J.)(citations omitted). "Those few instances where the courts have found that a constitutional violation may have occurred involved both a refusal to seatbelt the inmate (or the complete lack of a seatbelt) *and* purposeful, reckless driving by the defendant" Id. at *3(emphasis in original)(citations omitted). Based on the bare allegations of the complaint, the Court finds that the Plaintiff fails to allege facts which, if true, would demonstrate deliberate indifference on the part of either the van driver or the corrections officer(s) involved in the transport. This claim fails as a matter of law.

## VI. Conclusion

For the reasons discussed above, the Court will deny the Plaintiff's motion for the appointment of counsel and grant the Plaintiff's motion to amend. However, in screening the amended complaint pursuant to the PLRA, the Court finds that the amended complaint fails to state claims upon which relief can be granted under 42 U.S.C. § 1983 against all named Defendants. 28 U.S.C. § 1915A. Therefore, this action will be dismissed.

To the extent that the Plaintiff alleges he has not been permitted to return to Dr. Peebles (or any physician) for wound closure, the Court will dismiss this claim without prejudice. In the event that the Plaintiff has not received appropriate follow-up care by the date he receives this Memorandum, the Plaintiff is permitted to file a motion to reopen this case to raise only that particular issue. If the Plaintiff files such a motion, the Plaintiff will not be required to pay an additional filing fee.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE